## Case No. 14,481.

### UNITED STATES ex rel. BIGLER v. AVERY.

[1 Deady, 204; 1 Pac. Law Mag. 241.] [1]

Circuit Court, N. D. California.    April 10, 1867.

ASSESSOR OF INTERNAL REVENUE — APPOINTMENT —POWER OF REMOVAL—SURRENDER —PLEA—COSTS.

1. The act of July 1, 1862 (12 Stat. 433), creating the office of assessor of internal revenue, does not prescribe the tenure thereof, and therefore the incumbent is deemed to hold such only during the pleasure of the appointing power.

[Cited in Re Commissioners of Circuit Court, 65 Fed. 319.]

2. Where congress has the power to create an office, it may prescribe the term for which it shall be holden by the incumbent, and in such case there is no power of removal during such term.

3. The constitution does not expressly authorize or provide for removals from office otherwise than as a consequence of impeachment, and as an implied power "necessary and proper for carrying into execution" any power expressly vested in the government or any department or officer thereof, and therefore the power of removal can only be claimed by or attributed to the appointing power.

4. In this case the appointing power is the president and senate, acting concurrently, and, in the absence of legislation and precedent to the contrary, it follows that the president alone has not the power of removal.

5. By the action of the first congress and the uniform practice on the subject, down to the time when this controversy arose, the power of removal by the president had been practically conceded by congress, and the question being one which properly belongs to that body to regulate, its past action and acquiescence must be regarded by the courts as establishing or evidencing a regulation on the subject.

[Cited in People v. Freese, 83 Cal. 456, 23 Pac. 378.]

6. The power to regulate the subject of removals from office belongs to congress, and that body having for three fourths of a century practically conceded the authority to the president to make removals without the advice and consent of the senate, the court does not feel at liberty at this late day to deny him this power.

7. The defendant, having surrendered the office in controversy, to a person duly authorized to receive it, since the filing of the answer, is entitled to file a supplemental answer setting up this fact as a plea puis darrein continuance; and such

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission. 1 Pac. Law Mag. 241, contains only a partial report.]

surrender terminates the controversy, except as to costs, for which the plaintiff is entitled to judgment.

This was an information in the nature of a quo warranto, brought on the relation of John Bigler, to oust the defendant [John M. Avery] from the office of assessor of internal revenue for the Fourth district of California. It was tried by the court without the intervention of a jury, and the facts as stated in the findings as follows: I. That in the month of February, 1863, the defendant was duly appointed assessor of internal revenue for the Fourth district of California, and thereupon, being first duly qualified therefor, did enter upon such office, and perform the duties and receive the emoluments thereof, continuously, until October 20, 1866. II. That on September 19, 1866, in the recess of the senate, John Bigler was duly commissioned by the president assessor of internal revenue for the district aforesaid, "for the time being, and until the end of next session of the senate of the United States, and no longer." III. That on October 20, 1866, said Bigler, having first taken the oath of office prescribed by law, did demand of the said defendant the surrender of the books and papers pertaining and belonging to the office aforesaid, then in the possession and control of said defendant, who then refused to surrender or deliver the same to said Bigler; and at the date of filing the information herein, still so refused. IV. That from and after October 20, 1866, and at and after the filing of the information herein, the defendant claimed to be the legal incumbent of the office aforesaid, by virtue of his appointment and qualification aforesaid, and that during the periods last aforesaid, did act as assessor of internal revenue of the district aforesaid, and deny that said Bigler, by virtue of the commission granted to him as aforesaid, or otherwise, had or acquired any right to enter upon such office, or exercise the powers or perform the duties thereof. V. That during the session of the senate next following the issuing of the commission to Bigler as aforesaid, the president nominated said Bigler for the office aforesaid, but the senate refused to consent to such nomination, and rejected the same; and that afterwards, during the session of the senate last aforesaid, the president nominated T. J. Blakeny for the office aforesaid, to which nomination the senate then consented, and thereupon said Blakeny was duly commissioned as assessor for the district aforesaid. VI. That on March 9, 1867, W. C. Felch was duly appointed assistant assessor for a portion of the district aforesaid; and that at the date of such appointment, said Blakeny was absent from the state of California, and had not then entered upon the office aforesaid, and therefore said Felch was authorized by law to act as assessor of the district for the time being. VII. That on March 14, 1867, and while said Felch was acting as assessor as aforesaid, he demanded of the defendant the possession of said office and the books and papers pertaining thereunto; and the defendant then surrendered and delivered the same to said Felch, as required.

Delos Lake and Joseph Hoge, for plaintiff.
George Cadwallader and John McCullough, for defendant.

DEADY, District Judge. The constitution provides that the president "shall nominate, and by and with the advice and consent of the senate, shall appoint ambassadors, other public ministers, and consuls, judge of the supreme court, and all other officers of the United States whose appointments are not herein otherwise provided for, and which shall be established by law. But the congress may by law vest the appointment of such inferior officers, as they think proper, in the president alone, in the courts of law, or in the heads of departments." Section 2, of the internal revenue act of July 1, 1862 (12 Stat. 433), creates the office in controversy, and provides for the appointment of the incumbent. The material words of the section are these: "That the president of the United States be, and he is hereby authorized * * * to nominate, and by and with the advice and consent of the senate to appoint an assessor * * * for each such district, who shall be resident within the same." Upon these provisions of the constitution and statute, and the facts found in this case, arises the question, did the commission to Bigler, in conjunction with his subsequent qualification and demand upon the defendant, operate, in contemplation of law, to remove the defendant from the office of assessor of the fourth district? By the terms of the act under which the defendant was appointed, there is no limitation upon the tenure of the office, and the constitution is silent upon the subject, except as to judicial offices. The defendant not having any fixed term in the office, must be considered as holding it at the pleasure of the appointing power. I admit that, to my mind, this conclusion is not a necessary one; for, from the premises, it appears equally logical to conclude that the defendant is entitled to hold the office during good behaviour. But this question is not now open to argument in this court. In Ex parte Herman, 13 Pet. [38 U. S.] 258, 259, it was expressly decided by the supreme court, that when the law does not fix the term of office, it is held at the pleasure of the appointing power. In that case a clerk of a district court had been removed by the judge of the court, and there could be no question but that the removal was made by the appointing power. In this case the appointing power is the president and senate, acting concurrently, and the alleged removal is the act of the president alone. Had the president this power as the law was at the time

of the commission to Bigler? No case in which the question has been directly decided has been cited in the argument, and I am not aware that any exists. The Case of Herman, supra, states the historic fact, that at an early day in the existence of the national government, it was "much disputed," whether the power of removal was in the president and senate, or in the president alone, and that, by both practical and legislative construction, it was assumed and acted upon, that the power was in the president alone. But the court did not actually decide that this construction of the constitution was warranted by its language, and the question was not really before them for adjudication; yet it cannot be denied that in some measure the court gave its sanction to this doctrine. They speak of "its having become the settled and well understood construction of the constitution, that the power of removal was vested in the president alone in such cases, although the appointment of the officer was by the president and senate."

In the case of U. S. v. Guthrie, 17 How. [58 U. S.] 284, the power of the president to remove an officer, appointed with the advice and consent of the senate, was called in question but not decided. The act of congress creating the office of judge in the territory of Minnesota had provided that the incumbent thereof should hold for four years. The president removed the relator before the expiration of his term, and mandamus, was brought against the defendant—the secretary of the treasury—to compel him to pay the relator his salary. A majority of the court, avoiding the decision of the main question—the power of removal—decided that the remedy was not well taken, and dismissed the application for the writ. Mr. Justice McLean delivered a dissenting opinion, in which he discusses the president's power of removal at great length. As to the particular case then before the court, he maintained that the removal was not only unauthorized, but contrary to law. He says: "If congress have the power to create the territorial courts, of which no one doubts, it has the power to fix the tenure of office. This being done, the president has no power to remove a territorial judge, more than he has to repeal a law." This conclusion appears to me both just and legal. Congress having the power to create an office, may prescribe the term for which it shall be holden, or whether it shall be holden at pleasure. In the former case there is no power of removal anywhere, except as a consequence of impeachment. If the president alone, or the president and senate in conjunction, were allowed to make removals in such cases, it would be equivalent to allowing him or them "to repeal a law." But in that case there was a fixed term of office, while in the case of the defendant, Avery, no term is provided for, but the incumbent holds at the pleasure of the appointing power.

Upon the real question in this case, had the president the power to remove the defendant without the consent of the senate? Justice McLean argues for the negative, but seems to think that the power had been "too long established and exercised to be now questioned." Referring to the controversy in congress upon the subject, upon the passage of the act creating the department of foreign affairs, in 1789, he says: "There was great contrariety of opinion in congress on this power. With the experience we now have, in regard to its exercise, there is great doubt whether the most enlightened statesman would not come to a different conclusion. The attorney general calls this a constitutional power. There is no such power given in the constitution. It is presumed to be in the president, from the power of appointment. This presumption, I think, is unwise and illogical. The reasoning is: The president and senate appoint to office; therefore, the president may remove from office. Now, the argument would be legitimate, if the power to remove were inferred to be the same that appoints. * * * If the power to remove from office be inferred from the power to appoint, both the elements of the appointing power are necessarily included. The constitution has declared what shall be the executive power to appoint, and by consequence, the same power should be exercised in a removal. But this power of removal has been, perhaps, too long established and exercised to be now questioned. The voluntary action of the senate and the president would be necessary to change the practice; and as this would require the relinquishment of a power by one of the parties, to be exercised in conjunction with the other, it can hardly be expected."

So far as adjudged cases are concerned, this is all that can be found bearing upon the subject. Among the elementary writers the question is discussed by Kent and Story. The former (1 Kent. Comm. 309–10), after stating the opinion of the Federalist, pending the ratification of the constitution, that "the consent of the senate would be necessary to displace as well as to appoint," and referring to the different construction given to the constitution by the First congress, says: "This amounted to a legislative construction of the constitution, and it has ever since been acquiesced in and acted upon as of decisive authority in the case. * * * This question has never been made the subject of judicial discussion, and the construction given to the constitution in 1789 has continued to rest on this loose, incidental declaratory opinion of congress, and the sense and practice of the government since that time. It is, however, a striking fact in the constitutional history of our government, that a power so transcendent as that is, which places at the disposal of the president alone, the tenure of every executive office appointed by the president and senate, should depend upon infer-

ence merely, and should have been gratuitously declared by the First congress, in opposition to the high authority of the Federalist; and should have been supported or acquiesced in by some of those distinguished men who questioned or denied the power of congress, even to incorporate a national bank." Story (2 Comm. § 1538) says: "The power to nominate does not naturally or necessarily include the power to remove; and if the power to appoint does include it, then the latter belongs conjointly to the executive and the senate. In short, under such circumstances, the removal takes place in virtue of the new appointment, by mere operation of law. It results, and is not separable, from the appointment itself." After stating the arguments on both sides of the question, and referring to the legislative construction in favor of the executive power, by the congress in 1789, the distinguished commentator concludes (section 1543): "That the final decision of this question so made was greatly influenced by the exalted character of the president then in office, was asserted at the time, and has always been believed. Yet the doctrine was opposed, as well as supported, by the highest talents and patriotism of the county. The public, however, acquiesced in this decision, and it constitutes, perhaps, the most extraordinary case in the history of a government, of a power, conferred by implication on the executive by the assent of a bare majority of congress, which has not been questioned on many other occasions." And again (section 1544), "Whether the prediction of the original advocates of the executive power, or those of the opposers of it, are likely, in the future progress of the government, to be realized, must be left to the sober judgment of the community, and to the impartial award of time. If there has been any aberration from the true constitutional exposition of the power of removal (which the reader must decide for himself), it will be difficult, and perhaps impracticable, after forty years' experience, to recall the practice to the correct theory. But, at all events, it will be a consolation to those who love the Union, and honor a devotion to the patriotic discharge of duty, that in regard to inferior offices (which appellation probably includes ninety-nine out of a hundred of the lucrative offices of the government), the remedy for any permanent abuse is still within the power of congress, by the simple expedient of requiring the consent of the senate to removals in such cases."

The constitution does not expressly provide for removal from office, otherwise than as the legal effect or consequence of "impeachment for, and conviction of, treason, bribery, or other high crimes and misdemeanors." Article 11, § 4. If the power of direct removal from office is to be attributed to any department of the government, as necessary to some express power, my mind inclines to the conclusion, that upon the language of the constitution, such power can only be attributed to the appointing power. The appointing power, in this case, is the president and senate, acting concurrently. In the absence of legislation and precedent, I think it should be held that the president alone had no power to remove the defendant, and that, consequently, the commission of Bigler was a void act—there being then no vacancy in the office in question, and the president having no power to create such a vacancy. But, by the action of the First congress, and the uniform practice of the government down to the time when this controversy arose, the president's power of removal had been practically admitted and acted upon. The subject is one which, in my judgment, properly belongs to congress to regulate, rather than the courts. It is a legislative or political question, and not a judicial one. Heretofore, the supreme court has regarded the action of congress in the premises and subsequent practice, as establishing or evidencing a regulation of the subject, which it was not at liberty to ignore or disregard. Such considerations, at this late day, should have even more force in this court of inferior jurisdiction. It is true that many of the wisest and best men of the republic have always regarded the construction given to the constitution, by the congress of 1789, as unwise and impolitic, and I think subsequent events have vindicated the correctness of their opinion. But in this government the people must learn by experience, and within the constitutional limits of legislative action and judgment, they must be free, through their representation in congress assembled, to conduct the administration of their government uncontrolled by the courts. In the progress of time, it has been found and deemed that the unqualified power of removal from office by the president works injuriously, and congress has interfered to control and regulate the exercise of that power, by the passage of what is known as "The Tenure of Office Bill." In the passage of this act by congress it must have been assumed, and as I think correctly, that the constitution left the subject of direct removals from office to be regulated by the legislative power. In the great debate, which occurred in the senate on this subject in 1835, Mr. Clay, Mr. Webster and Mr. Calhoun, all agreed in maintaining that the constitution did not give the president the power of removal, and that the power was properly subject to legislative control and regulation.

From Mr. Calhoun's speech on this occasion, I quote, as follows: "If the power to dismiss is possessed by the executive, he must hold it in one or two modes; either by an express grant of the power in the constitution, or as a power necessary and proper to execute some power expressly granted by that instrument. All the powers under the constitution may be classed under one or the other of these heads; there is no intermediate class. The first question then, is, has the

president the power in question by any express grant in the constitution? He who affirms he has, is bound to show it. That instrument is in the hands of every member; the portion containing the delegation of power to the president, is short; it is comprised in a few sentences. I ask senators to open the constitution, to examine it, and to find, if they can, any authority of the president to dismiss any public officer. None such can be found; the constitution has been carefully examined, and no one pretends to have found such a grant. Well, then, as there is none such, if it exists at all, it must be as a power necessary and proper to execute some granted power; but if it exists in that character, it belongs to congress, and not the executive. I venture not the assertion hastily; I speak on the authority of the constitution itself—an express and unequivocal authority which cannot be denied nor contradicted. Hear what that sacred instrument says: 'Congress shall have power to make all laws which shall be necessary and proper for carrying into execution the foregoing powers (those granted to congress itself), and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof.' Mark the fullness of the expression, congress shall have power to make all laws, not only to carry into effect the powers exclusively delegated to itself, but those delegated to the government or any department or officer thereof; comprehending, of course, the power to pass laws necessary and proper to carry into effect the powers expressly granted to the executive department. It follows that, to whatever express grant of power to the executive the power of dismissal may be supposed to attach; whether to that of seeing the laws faithfully executed, or to the still more comprehensive grant, as contended for by some, vesting executive power in the president, the mere fact that it is a power appurtenant to another power, and necessary to carry it into effect, transfers it by the provisions of the constitution cited, from the executive to congress, and places it under its control to be regulated in the manner which it may judge best. Such are the arguments by which I have been forced to conclude that the power of dismissing is not lodged in the president, but is subject to be controlled and regulated by congress. I say forced, because I have been compelled to the conclusion in spite of my previous impressions; relying upon the early decision of the question, and the long acquiescence in that decision." To the force of this argument, I think nothing can be added. It amounts to demonstration. The power is with congress to regulate removals from office. Congress, by early action and long acquiescence, has allowed, if not authorized, the president to make removals without the consent of the senate in each particular case. The question being one of the exercise of a political power, which is within the power of congress to control and regulate, I do not deem it meet or proper for this court, at this late day, to assert by its judgment that all the presidents, from Washington to the present, have, in making removals from office, acted without authority or right in the premises. As the law and long established usage stood at the time of the commission to Bigler, the power of removal must be conceded to the executive by the courts. Congress had practically so conceded it, for three fourths of a century. In the determination of political questions, the courts are subordinate to the political department of the government. In Ex parte Herman, supra, the supreme court, without deciding the question, expressed a strong opinion that so well established a practice upon such a subject, could not be disregarded by the court, even at that early day.

A supplemental answer has been filed in this case, stating the facts as found by the court since the demand upon the defendant by Bigler. This answer was filed, subject to the defendant's right to plead these facts at the time. I think the answer may be filed, and that the matter set forth is material. It is a plea puis darrein continuance—good at common law and under the Code. From it, it appears that the defendant had relinquished the office to the United States and delivered the books and papers to an officer duly authorized to receive them. At any time before trial the defendant may yield the controversy and surrender the office. This terminates the controversy, except as to costs, and for these judgment must be given in favor of the United States.

One other question made by the learned counsel for the defendant remains to be noticed. The tenure of office bill, which is understood to have become a law on March 3, provides, as appears from a newspaper report read in court by counsel, that a person holding office by the consent of the senate shall only be removed by the concurrence of that body. Assuming this to be the correct reading of the tenure of office act, I cannot bring my mind to agree with counsel for the defendant—that the defendant, at the passage of this act, held the office, in contemplation of law. True, he was in the office, as the information alleges, but without legal right. At that time, so far as he can be said to have held the office, it was not by virtue of his appointment by and with the advice and consent of the senate, but rather as an intruder, and without legal right. Judgment for the plaintiff for its costs and disbursements.