Weldon, J.,
delivered the opinion of the court:
It is alleged in the petition, and substantially shown by the findings, that the claimant was on the 4th day of February; 1890, after his nomination by the President and confirmation by the Senate, appointed and commissioned for the term of four years as attorney for the United States in and for the northern and middle districts of Alabama; that he thereupon entered upon the discharge of his duties as such attorney, and thereafter gave to the duties of said office his professional attention and care until the 20th day of May, 1893; that upon that date he received from the President of the United States a communication as follows, to wit:
“Executive Mansion,

11 Washington, D. 0., May 26,1893.

“ Sir : You are hereby removed from the office of district attorney of the United States for the northern and middle district of Alabama, to take effect upon the appointment and qualification of your successor.”
*238 To that communication the claimant replied, in substance, that his commission bore date February 4,1890, for the term of four years; that he was advised by counsel that the President had no right to remove him, and therefore he declined to surrender the office.
On the 26th day of May, 1893, Emmet O’Neal, esq., was appointed the successor of claimant, and on the 20th of June, 1893, he made application to the Circuit Court of the United States for the southern division of the northern district of Alabama for an order requiring claimant to surrender to him all the books, papers, and other property appertaining to said office. Upon such application the court made the order as requested'; and the claimant accordingly surrendered the possession of all the books, papers, and property belonging to his office as United States attorney. The claimant notified the Attorney-General of the United States and his successor that he declined to yield possession of his office before the granting of said order.
From January 1,1893, to May 26,1893, the petitioner’s fees in cases in the Circuit and District Courts of the United States of the northern and middle districts of Alabama amounted to the sum of $6,405.40; his' account therefor was approved by the court, audited and allowed by the Treasury Department; since the 26th day of May, 1893, and prior to the 31st day of December, 18 '3, there have been earned for services by his successor over the sum of $4,000, making an aggregate of fees earned in the office during the year 1893 the sum of $10,405.40; claimant paid during the year for stationery and clerk hire the sum of $1,088.31; and has received the sum of $3,487.34 for his services during the year 1893.
No charges were made against said claimant because of any delinquency in the -discharge of his duty, to the knowledge of said claimant, though he made inquiry to ascertain if any were to be preferred.
The successor of claimant was confirmed by the Senate on the 22d day of August, 1893, and from thence hitherto he has been in the possession of the office, and in the discharge of his duties, as he had been between the 26th day of May and said date.
The facts thus briefly stated involve the question whether the removal of claimant, and the appointment of his successor *239 by and with, tbe advice and consent of tbe Senate, deprives bim of tbe emoluments of bis office during tbe remainder of tbe term for wbicb be was commissioned.
Sections 767 and 769 of tbe Eevised Statutes in substance provide that there shall be appointed a district attorney of tbe United States for tbe northern district of Alabama, that be shall perform tbe duties of tbe middle district of said State, that bis appointment shall be for tbe term of four years, and that tbe commission shall expire at tbe end of four years from its date. Tbe claimant insists that because be was so appointed, and because bis commission was for tbe term of four years, be has a vested right in tbe emoluments of tbe office for that period, and, therefore, tbe removal by tbe President was without authority of law and in violation of bis right to serve during tbe term specified in tbe commission.
Tbe statute of 1789, providing for tbe appointment of district attorneys (1 Stat. L., p. 92), was intended for tbe exercise of tbe power of appointment recognized in section 2, Article II, of tbe Constitution, in wbicb it is declared that tbe President u shall nominate, and by and with tbe advice and consent of tbe Senate, shall appoint ambassadors, other public ministers and consuls, judges of tbe Supreme Court, and all other officers of tbe United States whose appointments are not herein otherwise provided for and wbicb shall be established by law; but tbe Congress may by law vest tbe appointment of such inferior officers, as they think proper, in tbe President alone, in tbe courts of law, or in tbe beads of Departments.” Under this provision tbe President has tbe constitutional right of appointment of certain officers specified in tbe Constitution and such officers as be may by lawr be authorized to afipoint.
Tbe office of tbe United States attorney was created in tbe year 1789, and grew out of tbe necessity of having some person to represent tbe interest of tbe Government in tbe various courts established by Congress, and is a part of tbe judicial system established by the Act approved September 24, 1789 (1 Stat. L., 92). Tbe law provides, “And there shall be appointed in each district a meet person learned in the law to act as attorney for tbe United States in such district.” Nothing is said in tbe statute as to who shall appoint, nor what shall be tbe duration or term of service. Under that provision of tbe statute tbe President, in tbe exercise of bis power of *240 appointment, selected persons of tbe bar to represent tbe Government in all litigations, incident to its civil business, and in tbe prosecution of crimes, misdemeanors, and offenses against tbe laws of tbe United States. Tbe statute also provided for tbe appointment of an Attorney-General of like professional qualifications, to represent tbe United States in tbe Supreme Court of tbe United States and tbe performance of other duties prescribed by tbe statute.
Tbe status of tbe office of district attorney so far as tbe power of appointment was concerned remained unaffected from 1789 to 1820, when an act entitled “An act to limit tbe terms of office of certain officers therein named, and for other purposes,” was passed (3 Stat. L., 582). Among tbe offices in that act enumerated is the office of district attorney. It is provided that tbe district attorney “shall be appointed for tbe term of four years, but shall be removable from office at pleasure.” Nothing is said in tbe act as to rvho shall appoint, and tbe only reference to tbe President in tbe act is that, be shall have power to increase tbe bond of certain officers. The statute makes provisions for the expiration of tbe commissions issued before tbe passage of tbe law, and subjects them to tbe limitations of tbe statute, so as to conform to tbe policy of having a commission expire by limitation of time.
For a period of over thirty years tbe President exercised tbe power of appointment under tbe act of 1789 without any legislative attempt to define or control bis right as to tbe mode or manner of appointment, or tbe time for which tbe appointment should be made. During that period it is safe to assume that many changes bad been made in tbe office of district attorney and other offices by tbe Presidents who served during the period from 1789 to 1820. From these repeated removals it bad become the practice and custom of tbe Executive to remove officers at pleasure without tbe authority or sanction of tbe Senate.
Tbe record presents a grave question of constitutional law. and it is a remarkable feature of our judicial history that, so far as we have been able to ascertain, it lias never been definitely passed upon by either an inferior or tbe Supreme Court of tbe United States. It is strange that out of tbe many removals no litigation has arisen involving tbe direct question made by tbe facts of this case. Tbe Court of Claims lias been *241 established for nearly forty years, and yet no person has availed himself of its jurisdiction to determine the question of the right of a removed incumbent to the emoluments of the office for the unexpired portion of the term of his commission. The que« tion of the power of the President to remove at his pleasure, without the concurrence of the Senate, was made in the discussion incident to the adoption of the Constitution in the pages of the Federalist. Chancellor Kent says:
“This [that the power of removal rested with the President and Senate] was the construction given to the Constitution while it was pending for ratification before the State conventions by the author of the Federalist. ‘The consent of the Senate/the Federalist observes, ‘would be necessary to displace as well as to appoint;7 and he goes on to observe that • those who can best estimate the value of a steady administration will be most disposed to prize a provision which connects the official existence of public men with the approbation or disapprobation of that body, which, from the great permanency of its own composition, will in all probability be less subject to inconstancy than any other member of the Government.7 But the construction which was given to the Constitution by Congress, after great consideration and discussion, was different. In the act for establishing the Treasury Department the Secretary was contemplated as being removable from office by the President. The words of the act are, 1 That whenever the Secretary shall he removed from office by the President of the United States, or in any other case of vacancy in the office, the assistant shall act,7 etc. This amounted to a legislative construction of the Constitution, and it has ever since been acquiesced in and acted upon as of decisive authority in the. case. It applies equally 'to every other officer of Government, appointed by the President and Senate, whose term of duration is not specially declared. It is supported by the weighty reason that the subordinate officers in the executive department ought to hold at the pleasure of the head of that department, because he is invested generally with the executive authority, and every participation in that authority by the Senate was an exception to a general principle and ought to be taken strictly. The President is the great responsible officer for the faithful execution of the law, and the power of removal was incidental to that duty and might often be requisite to fulfill it.
“This question has never been made the subject of judicial discussion, and the construction given to the Constitution in 1789 has continued to rest in this loose, incidental, declaratory opinion of Congress and the sense and practice of Government since that time. It may now be considered as firmly and definitely settled and there is good sense and practical utility *242 in. tbe construction. It is, liowever, a striking fact in tbe constitutional history of our Government that a power so transcendent as this is, which places at the disposal of the President alone the tenure of every executive officer appointed by the President and the Senate, should depend upon inference merely, and should have been gratuitously declared by the First Congress in opposition to that high authority of the Federalist, and should have been supported or acquiesced in by some of those distinguished men who questioned or denied the power of Congress even to incorporate a national bank.”
By this eminent authority, the district attorney, from the creation of the office in 1789 to 1820, by constitutional implication and construction, held at the pleasure of the President, and after the passage of the apt of 1820 that construction and implication was recognized by the statute, which continued in force and regulated the tenure of appointed officers, except certain judicial officers enumerated in the Constitution, until the passage of the Tenure of Office Act March 2, 1867 (14 Stat. L., 430). By that act it is enacted “that every person who is appointed to any civil office by and with the advice and consent of the Senate, and who becomes duly qualified to act therein, shall be entitled to hold such office until a successor shall have been in like manner appointed and duly qualified.” That provision of the act was repealed by the Act April 5, 1869 (16 Stat. L., 6), and it was enacted instead “that every person holding any civil office to which he has been or may be hereafter appointed by and with the advice and consent of the Senate, and who shall have become duly qualified to act therein, shall be entitled to hold such office during the term for which he shall have been appointed unless sooner removed by and with the advice and consent of the Senate, or by the appointment with the like advice and consent of a successor in his place.”
These two statutes were incorporated into the Bevised Statutes which were passed June 22,1874, and declared the law as it existed December 1, 1873. The sections of the Bevised Statutes embracing these statutes were repealed by the Act March 3, 1887, chap. 353 (1st Supp. R. S., 2d ed., 558).
We have quoted and cited all the statutes which, as we believe, have been passed by Congress affecting the question at issue in this proceeding; and while they tend to throw light upon the pathway of investigation and decision they are not *243 absolutely .decisive of tbe rights of tbe litigants. They still leave tbe question embarrassed with some doubt and uncertainty. Tbe fact tbat Congress in tbe early days of tbe Government, after a mature deliberation and a discussion in wbicb tbe ablest statesmen participated, decided to recognize tbe power of removal in tbe President, is a strong argument in favor of tbat theory, and when in 1820 they legislated upon tbe subject of tbe tenure of office and by express terms subjected tbat tenure to tbe pleasure of tbe President, is an additional argument in favor of tbe construction tbat bis prerogative of appointment and removal could not be limited or impaired. Tbat construction of tbe Constitution and condition of legislation prevailed until tbe year 1867, when tbe act known as tbe tenure of office act was passed, establishing a new theory of constitutional law and a new policy of political administration. That act grew out of tbe peculiar state of civil society because of a readjustment of our institutions incident to tbe great civil war. It is not necessary to discuss tbe provisions of that'measure, as it was repealed by tbe act of 1887. It has passed into history, and is valuable as a legislative construction of tbe Constitution of tbe United States in conflict with that theory wbicb bad prevailed in tbe legislation of tbe country prior to its enactment. It is sufficient in this connection to state tbat tbe Supreme Court, in tbe case of Embry v. United States (100 U S., 680), in wbicb was involved tbe acts of 1867 and 1869, did not pass upon tbe constitutionality of tbe statutes, inasmuch, as tbat question was not necessarily involved. Tbe court said:
“The important constitutional question wbicb has at times occupied tbe attention of tbe political department of tbe Government ever since its organization, and wbicb was brought to our attention in tbe argument, is not, as we think, involved. Tbe question here presented is not one of office, but of salary. Wherever tbe power of removal from office may rest, all agree tbat Congress has full control of salaries, except of tbe President and tbe judges of tbe courts of tbe United States. Tbe amount fixed at any one time may be added do or taken away from at will. No officer except tbe President or a judge of a court of tbe United States can claim a contract right to any particular, amount of unearned compensation. If an officer is not satisfied with what tbe law gives him for bis services be may resign.”
*244 Tbe tenure of office act was not only in principle - reenacted by tbe Act April 2, 1869 (16 Stat. L., 6), but in tbe adoption of tbe Bevised Statutes on June 22,1874, Congress incorporated its provisions in tbe sections heretofore cited, as being tbe law in force on the 1st day of December, 1873.
Tbe principle and policy of limiting the prerogative of tbe President, enacted in 1867, continued until tbe act of 1887 (supra) was passed repealing whatever limitation was imposed by tbe act of 1867.
Tbe act of 1887 is simply a statute of repeal, and has no provisions affecting tbe law beyond tbe negative quality of repealing tbe act of 1867 as modified by tbe act of 1869. When Congress adopted tbe Bevised Statutes in July, 1874, they omitted from section 769 tbe words “shall be removable from office at pleasure” as found in tbe Act 1820 (3 Stat. L., 582), in order that tbe consistency of tbe law might be preserved, adopting as they did as part of tbe Bevised Statutes tbe substance of tbe act of 1867 as amended by tbe act of 1869. Section 769 is an embodiment of tbe substance of tbe acts of 1789 and 1820, as will be seen by tbe marginal reference to those two statutes.
This being tbe state of tbe statutory law upon tbe subject, it leaves in force and for construction in tbe determination of tbe issue made by tbe facts, section 769.
It is insisted by counsel for claimant that a term of four years clearly means a continued, consecutive, uninterrupted enjoyment of tbe rights, emoluments, and title of tbe office for that time. In support of this proposition reference is made to tbe case of Gaillard v. Gaillard (23 Miss., 152), and tbe case of Kimberlin v. State (130 Ind., 120).
Tbe case of Kimberlin is that of a township trustee, and tbe Supreme Court held in relation to bis rights as an officer, “where an officer is lawfully elected and in tbe possession of an office bis right to bold over continues until a qualified successor has been elected by tbe same electoral body as that to which be bolds election or which by law is entitled to elect bis successor.” Tbe case in 23 Mississippi is that a term of three years as used in tbe law of divorce must be without interruption, and it is not proper to join two distinct periods in order to fill tbe measure of tbe statute. While these autbori *245 ties tend to establish the proposition of counsel, they do not reach the contention in this case.
It is also insisted that as section 769 of the Bevised Statutes was unaltered in terras and unaffected by any specific mention in the repealing act of 18S7, that that section is the law of this case; and as it provides a term of four years as the duration of the claimant’s term, his removal before the expiration of his commission was unlawful, and does not deprive him of the right to the emoluments of his office as long as that term continues in time; that the act of 1820 was not revived by the repeal of the acts of 1867 and 1869, and therefore the pleasure of the President was eliminated from the statute and claimant’s right was beyond the control of executive power founded upon the will of the President. The right to recover is by the argument of counsel placed upon section 769, and because that section, as it is claimed, makes the district attorney’s office an absolute holding of four years, his removal without the proceeding of impeachment does not impair his right to the salary and fees to the office. This case logically resolves itself into that issue.
If Congress intended by the repeal of the acts of 1867 and 1869, without reference to section 769, to leave in force the time as specified in that section and thereby circumscribe the prerogative of the President in the removal of the district attorney, it presents the question of the constitutionality of that section; but if Congress intended by the repeal of the acts of 1867 and 1869 to leave the question of the right of removal as it had been left by the legislation and practice of the Government from 1789 to 1867, then no question of constitutional law arises, and the issue is disposed of on an interpretation of the statute.
In the discussion of the constitutional right of the President to remove an officer without the concurrence of the Senate many distinguished statesmen, jurists, and authors have participated; and the question as one of constitutional philosophy is left where the disputations of learned men very frequently leave a question of moral reasoning — still within the pale of doubt and uncertainty. We do not deem it necessary to indulge in any length of argument upon the question of the constitutional right of the President to remove at his pleasure, nor to determine upon which side of the question the weight *246 of authority rests. Both sides of the issue are stated with admirable clearness in the learned treatise of Mr. Justice Story iñ his commentaries upon the Constitution (2 vol., secs. 1537 to 1541).
The question of the power of removal without the consent of the Senate came before the Supreme Court in the case of McAllister v. The United States (141 U. S., 174) on an appeal from this court. While that case does not decide the point at issue in this proceeding, it maybe cited as tending to a correct understanding of the law applicable to the facts of the case at bar.
The Supreme Court in the McAllister Case decided in substance that the claimant could be suspended under section 1768 of the Revised Statutes, and could be removed before the expiration of the term of service in the manner pointed out by said section, he not being one of the excepted officers of the law.
The theory of claimant in the McAllister Case was that he held by a life tenure, and was therefore not subject to removal; but the Supreme Court, in affirmation of the judgment of this court, decided that he did not so hold, and that his removal was lawful in pursuance of the Revised Statutes, and he could not therefore recover. The case is cited in the briefs of both counsel, the claimant’s contending that inasmuch as the case of Marbury v. Madison (1 Crunch, 137) was cited, the Mar-bury Case is applicable and decisive of the rights of the claimant. The case of Marbury is perhaps the most celebrated case in our judicial history, and while it has been the subject of adverse criticism because of a decision of constitutional questions not authorized by the questions in issue, its reasoning has never been successfully refuted nor its legal conclusions denied by any decision of the Supreme Court of tbe United States. We are cited to the following extract from the opinion of Chief Justice Marshall:
“Where an officer is removable at the will of the Executive the circumstance which completes his appointment is of no concern, because the act is at anytime revocable, and the commission- may be arrested, if still in the office. But when the officer is not removable at the will of the Executive the appointment is not revocable, and can not be annulled. It has conferred legal rights which can not be annulled. It has conferred legal rights which can not be resumed.
*247 ‘‘The discretion of the Executive is to be exercised until the appointment lias been made; but having once made .the appointment, his power over the office is terminated in all cases where by law the officer is not removable by him. The right to the office is then in the person appointed, and he has the absolute, unconditional power of accepting or rejecting it.
“Mr. Marbury, then, since his commission was signed by the President and sealed by the Secretary of State, was appointed, and as the law creating the office gave the officer a right to hold for five years, independent of the Executive, the appointment was not revocable, but vested in the officer legal rights, which are protected by the laws of his country. * * *
“The power of nominating to the Senate and the power of appointing the person nominated are political powers, to be exercised by the President according to his own discretion. When he has made an appointment he has exercised his whole power, and his discretion has been completely applied to the case. If by law the officer be removable at the will of the President, then a new appointment may be immediately made, and the rights of the officer are terminated. But, as a fact which has existed can not be made never to have existed, the appointment can not be annihilated; and, consequently,.if the officer is by law not removable at the will of the President, the rights he has acquired are protected by the law, and are not resumable by the President. They can not be extinguished by Executive authority, and he has the privilege of asserting them in like manner as if they liad been derived from any other source.”
The office at issue in the Marbury Case was that of justice of the peace for the District of Columbia, and did not pertain exclusively to the execution of the laws. The duty of a justice is to judicially apply the laws in the litigation of the citizens and the investigation in preliminary examinations of persons charged with crimes and misdemeanors. The district attorney is not a judicial officer, but an officer specially appointed to assist the executive branch of the Government in the execution of the law by the. prosecution of persons charged with a violation of law, and in that respect occupies a close official relation to the President in the execution and performance of the trust reposed in him by the Constitution, by the laws, and by the peculiar duties pertaining to his office as the exec: utive head of the nation.
The Supreme Court said in the case of McAllister, “What may be the powers of the President over Territorial judges, now that section 1768 is repealed, is a question we need not now discuss.” So it may be seen, that although the case is cited, *248 it does not decide the exact question at issue in this proceeding. In the case of Ex parte Hennen (13 Pet., 259) it is said, “All offices the tenure of which is not fixed by the Constitution or limited by law must be held either during good behavior or (which is the same thing in contemplation of law) during the life of the incumbent, or must be held at the will and discretion of some Department of the G-overnment and subject to removal at pleasure.” Although the words “limited by law” are used by the court, in another place it is said, “ Ño one denied the power of the President and Senate jointly to remove where the tenure of office was not fixed by the Constitution, which was a recognition of the principle that the power of removal was incident to the power of appointment. Put it was very early adopted as the practical construction of the Constitution that this power was vested in the President alone.”
In the case of the United States v. Avery (1 Deady, 204) it is held in substance that Congress, having the right to create an office, have the power to prescribe the term, and that the incumbent will hold as against the power of the President during the term for which he was commissioned. The question was not properly in the record of that case, and but reflects the opinion of the judge on the abstract question of the power of the President.
In the case of the United States v. Guthrie (17 Howard, 284) the question did not properly arise, and heuce the court refrained from a decision affecting the power of the President to remove the petitioner. The decision was placed upon the ground that mandamus was not the proper remedy to enforce the payment of the salary of a Territorial judge who had been removed by the President. Mr. Justice McLean delivered a dissenting opinion, in which he took the ground that the President had no power to remove an officer appointed by the advice and consent of the Senate, and in the opinion asserts many of the reasons which from the adoption of the Constitution had been used by the statesmen, jurists, and authors against the constitutional theory that the President has the right of removal.
In the case of Blake v. The United States (103 U. S., 227) Mr. Justice Harlan discusses at length by the citation of opinions of distinguished law officers of the Government and decisions of the Supreme Court the question of the power of the President to remove appointed officers both in the civil and military *249 service of tbe Government. The case was that of a chaplain in the United States Army, and involved the question of the power of the President to remove an officer of the Army. The court in substance held that the President had the power to remove an officer of the Army by the appointment, by and with the advice and consent of the Senate, of his successor, and in support of this theory of the law quotes the opinion of Attorney-General Legare in reply to the inquiry of the President as to whether he could strike the name of an officer from the roll without a trial by court-martial, as follows :
“Whatever I might have thought of the power of removal from office, if the subject was res integra, it is now too late to dispute the settled construction of 1789. It is according to that construction, from the very nature of executive power, absolutely in the President, subject only to his responsibility to the country (his constituents) for a breach of such a vast and solemn trust. (3 Story Com. Const., 397, sec. 1538.) It is obvious that if necessity is a sufficient ground for such .a concession in regard to officers in the civil service, the argument applies a multo fortiori to the military and naval departments. * * * I have no doubt, therefore, that the President has the constitutional power to do what he did, and that the officer in question is not in the service of the United States.”
He also quotes with approbation the opinion of Attorney-General Cushing, in which he says:
“ I am not aware of any ground of distinction in this respect, so far as regard s the strict question of law, between officers or the Army and any other officers of the Government. As a general rule, with the exception of judicial officers only, they all hold their commissions by the same tenure in this respect. Reasons of a special nature may be deemed to exist why the rule should not be applied to the military in the same way as it is to civil officers, but the legal applicability to both classes of officers is, it is conceded, the settled construction of the Constitution. It is no answer to this doctrine to say that officers of the Army are subject to be deprived of their commissions by the decision of a court-martial. So are civil officers by impeachment. The difference between the two classes is in the form and mode of trial, not in the principle, which leaves unimpaired in both cases alike the constitutional power of the President.”
The court held as the ultimate conclusion of law, that the appointment of the successor of Blake with the advice and consent of the Senate operated in law to supersede him, and *250 thereby to remove him from bis position as an officer of the Army.
As lias been said, tbe omission of the words “ at the pleasure of the President” from section 769 as found in the act of 1820 became a necessity, as the Eevised Statutes adopted the substance of the acts of 1867 and 1869, in which the pleasure of the President was denied. The object of the repeal of the sections of the Eevised Statutes (embodying the substance of the tenure of office act) by the act of 1887 was to restore the law to what it had been prior to 1867, and thereby leave to the President the exercise of the power of removal, as it had existed from 1789 to 1820, by constitutional interpretation, and from 1820 to 1867 by the terms of the act of 1820. Section 769 limits the term of the office, but that does not necessarily limit the right of the President to remove before the expiration of the term, and this aside from the question as to whether Congress can limit the power of removal.
If the contention of the claimant be true, that the President even with the advice and consent of the Senate can not remove, then the claimant’s possession of the office can be reached only through the medium of an impeachment. This construction of the statute might result in the holding of many officers unworthy and incompetent until the end of the term, because it would be practicably impossible to determine the question of removal by the slow and tedious process of impeachment. If the claimant, as district attorney, has the right to remain in office during the time limited in his commission, every other officer of the United States appointed for a specified period would have the same right, and to apply to them all the proceedings of impeachment would involve the administration of the Government in endless confusion and disturbance.
Under the tenure of office act, the remedy was in the power of the President and Senate; but under the construction that the incumbent has the right to hold except as against the power of impeachment, that remedy is taken away and the officer is beyond the jurisdiction and control of the power from which he derived his authority to act. Upon any theory of the law, the power of removal is incident to the power of appointment, and if the President and Senate concur in the removal, it fills the measure of requirement as contended for *251 by the theory that the President alone is not authorized to remove. The court said in the Blake Case that the appointment of his successor wifh the advice of the Senate operated to supersede him; yet the act of 1866 provided that an officer should not be removed in time of peace except upon the sentence of a court-martial or in mitigation thereof.
The term of four years as used in section 769 is a limitation beyond which the officer can not serve without a new appointment, but was not intended to limit the power of the President' in the removal of officers holding Federal positions by appointment of the Executive. The officer is to hold for four years “ subject to the conditions prescribed bylaw,” and by the repealing’ effect of the act of 1887 the four years became subject to the power of the President to remove, as recognized by constitutional construction and the act of 1820 prior to the adoption of the act of 1867.
The President, on the 26th of May, removed the incumbent, and on the 22d of May following the Senate concurred in the appointment of his successor, thereby ratifying and confirming the removal of the claimant. That ratification removed him from office, and unless he had a vested legal right in his office and its consequent emoluments, his removal is a complete answer to his demand in this proceeding. It is the opinion of the court that he took the office subject to the right of removal, and the removal bars his right to recover. As we understand, the practice of the executive department, since the passage of the act of 1887, has been in accordance with its practice before the enactment of the act of 1867, and that construction sanctions the theory of the law indicated by this opinion. It is the judgment of the court that the petition be dismissed. .